Good afternoon, Kimberly Thomas for Ms. Cherie Miller from the Michigan Clinical Law Program at the University of Michigan. Your Honor, I would request two minutes for rebuttal. You may. Thank you. May it please the Court, the evidence in this case is a vengeful accusation from the grave by a jilted ex-lover and ex-police officer in the form of a suicide letter so that Ms. Miller, my client, can get what's coming to her. This typed letter was left as part of a, with a briefcase, as part of a workup of evidence for law enforcement. And in this letter, Mr. Cassidy confessed to a murder and accused Ms. Miller of helping to set it up. Mr. Cassidy showed through the words and the circumstances of this statement that he wanted to take revenge on Ms. Miller in a calculated and deliberate way. Under these circumstances, the Michigan Court of Appeals unreasonably applied and the decision was contrary to clearly established Supreme Court law of Ohio v. Roberts, Levy, Illinois, and Progeny. Cross-examination in this matter was anything but superfluous. There are no particularized guarantees of trustworthiness. This Court has previously decided that Ms. Miller is guilty of current constitutional law. She is also held in violation of clearly established prior constitutional law referenced previously. As an initial matter, the evidence was admitted under the catch-all exception to the hearsay rule. So we're not in a situation where there's a firmly rooted hearsay exception. There's a presumption under Ohio v. Roberts against the admission of evidence unless there are particularized guarantees of trustworthiness. There's further presumption under Lee as well as a separate line of cases, Bruton and Gray, against the use of a co-defendant's confession, which inculpates an alleged accomplice. But that isn't quite apposite, though. I mean, it seems, and I want you to tell me if you think I'm wrong. I mean, because, I mean, we have a decedent here who had not been charged as opposed to a co-defendant who potentially might have a motive to try to shift the blame for one crime to someone else. Well, that's exactly, there are two reasons why the courts have been so consistently opposed to the entrance of evidence. It's that the jury considers these confessional statements so powerful and that they're made at a time when the declarant has a motive to point the finger at the other person. And I would submit to this court that that is exactly the situation that we are in. So it's a different motive, admittedly, but you say that so that he did have a motive. It's not a motive to avoid guilt or conviction because he's dead. It's a motive, in your view, to seek revenge. That's correct. That he is seeking, through the statement, so that the statement is both a confession and an accusation. But to the extent you say that, why does he write three suicide notes, only two of which, only one of which surfaces, when he could have easily put the statement in the briefcase if he wanted it to get to the authorities? I mean, to buttress your motive theory. So there are two things. He, in fact, did intend that law enforcement receive the letter, and I don't want to, you know, re-argue this under a different guise, but that some of the facts are still relevant to the question of trustworthiness. On its face, the letter was addressed to his parents. However, he knew it would be passed on to law enforcement. He stated in there... How do you know that in the sense that the other two notes didn't get to law enforcement? He says, I have the proof. I'm sending it to the police. She's going to get what's coming. He set up this chain of custody. So the suicide type letter is in an envelope on top of a briefcase. That briefcase is under Mr. Cassidy's bed. He had stated to his brother previously that if something happens to me, go look under the bread. There you'll find what's important. And what was there was this letter. There's also an envelope that says, Mike, that's his brother, don't open alone, and the name and address of an attorney to whom he goes. Am I right? There's lots of stuff in the briefcase. I mean, there's lots of stuff in the briefcase which mostly does get admitted. The other evidence inside of the briefcase is instant message as well as emails between them. There's a pornographic video. There's some other photographs. But there's, in a sense, a fair amount of stuff which does get admitted. That comes in as well, in addition to the whole package. The prosecutor at trial treats this as a whole package of evidence against Ms. Miller. The suicide letter, the instant Her argument ties it all together. I just have the trial court citation, but it's 218 in the trial record. They make this part of one package deal. He has created this evidence in order to get vengeance on her. And so this is very different from Franklin, which is cited by Brother Counsel, where the statement is made to a friend who, quote, has no reason that it would ever be revealed to law enforcement. In fact, Mr. Cassidy's father brings this letter to the attorney's with this briefcase. Everything is there. It's all together. I mean, and I understand your point. And I think that's a very fair characterization of how it was treated at trial. But if the question is his motive, I mean, isn't it arguable that he thought the briefcase contents were what, that he intended those to do her in? And this letter, I'm just saying arguably, was meant just for his parents as the other plaintiff's recipients? No, because he puts it in the same location. So it's not as if this is a letter that's near his body where he's, you know, it's typewritten. It's got the same content in terms of its accusations against Ms. Miller. It's all of a piece. Secondly, his motive and intention is shown through his language in the letter. So he says that while he killed her, that she is basically behind it. She helped set it up. And he says, quote, she will learn she can't do that to people. Sure, no. Well, who's people? People is Mr. Cassidy. He's going to show that she can't do that to people. She can't do that to him. He's going to take his vengeance on her. And he blames her for what happens to him. This is not the statement of someone who is a neutral party. It's a statement of someone who has every motive to lie, that he wants to make her pay. And that's exactly what the Confrontation Clause guards against in its trust. Isn't there a counter motive, I mean, that, or something that assuages that concern? I mean, what is the likelihood that in his last communication with his parents, he's going to lie to them and say he committed this terrible murder? And the letter otherwise seems to show a lot of affection for his parents. Why, I mean, why would somebody do that? Well, there's two things. One is there's a confessional piece of it and there's an accusatory piece of it. And the accusatory piece doesn't have, doesn't exist in the world where, you know, maybe we might be honest with our friends and family. And frankly, a suicide letter is your last statement. Mr. Cassidy is taking care of worldly business in the suicide letter. He is getting back at Ms. Miller for everything she did to him and everything that he sees this. And that's, that's he, that's the purpose of this, you know, part of the purpose. If this, if the letter is reliable as to whether Cassidy was the murderer, isn't it also reliable as to Miller's inducement of him to commit the murder? I think as an initial matter, it's not necessarily reliable with respect to his confession, but the case law looks at those separately, right? So the case law on co-defendant accusation says, you know, well, even if it's inculpatory to the defendant, it's the co-defendant, it's the accusation against the alleged accomplice that is so troublesome, that is so troublesome in the decades and decades of case law. And I understand that as a general matter, but I think the reliability determination is case specific. And as I understand it, our task here is to see whether the state court's reliability determination with respect to this letter was out of bounds, that, that EDPA permits. And looking at the, the, the fact pattern of this case, it's just, it seems to me plausible that if it's reliable as to his confession, that it's reliable as to his pointing, his saying that she induced him to do it. I mean, why else would he do it? We would love to ask him, right? That's the whole point of the confrontation, right? He needs to be, he needs to be confronted. We don't know whether his, whether he killed Bruce Miller or not. We don't know whether Ms. Miller put him up to it or not. All we know is what he says there. Well, we only, we don't know. Okay. No, I understand your point. Yeah. That's, that's, you know, really why this letter is so important to the case and why its trustworthiness is so in question. It's just, it's hard. I mean, it's hard. And I sympathize with your situation because it's hard to make this argument in an EDVA case. In a direct review case, you know, the state had, the court has less latitude, but. So two things. I, the state argues that the fact of a suicide note makes it reliable. I do question that assumption. There are a million reasons people commit suicide. There were a lot of other facts in the record with respect to Mr. Cassidy about why he may have committed suicide. There are many reasons he may have committed suicide for one reason and stated something else in the letter. And that is supported by the record. So the, the fact of a suicide note doesn't independently give anything. Second, as a, as a matter to look at the state court's opinion, it is an unreasonable opinion. It doesn't recognize the presumption against the mission of evidence without particularized guarantee or it certainly doesn't recognize the state's burden. It doesn't recognize that any of the case law that might suggest or looks at bias or issues of a motive to shift attention from the declarant to an alleged accomplice. It completely ignores that line of cases. It specifically says that it's relying on the state trial court for specific factual findings which are absent from the state trial court record. So the court of appeals says that the state trial court noted that it was consistent. That's actually not in the state circuit court or district court at all. That, of course, we, I would assert that the lower courts didn't do that because it's contrary to clearly established law. The state court of appeals says that the state trial courts found it was contemporaneous to his death. There's no such finding in the trial record either at the district court or the circuit court. That's unreliable. And the state court basically repeats facts, factors from another state court case without any basis in the facts of this case. And why does that matter? It matters because, for example, in Dorche this court has looked at one of the asserted reasons for a state court opinion and said that is not supported by the facts of the case. And the other reasons the court uses are insufficient to show reliability and the court there found it was an unreasonable application. Similarly, in Wiggins v. Smith, the U.S. Supreme Court looked at a state court opinion that assumed that an investigation was adequate in the capital case, which was belied by the record, by the lower court record, and found that that was an unreasonable application of clearly established law, Strickland there. So the state court's gross errors in its opinion also support a finding that this is an unreasonable application of clearly established law. When you said that the state court had found that it was contemporaneous with his death, the statement, is that any different from their analysis of the fact that his memory would be good, that it was contemporaneous in the sense that the murder that he's talking about happened within three months of the death? So the statement had to have been written within those three months. Did it make an affirmative statement that it was contemporaneous in the sense that it was written the day before? No, it doesn't actually do any analysis. It just says it's contemporaneous to death. That would be a different inquiry. I would certainly submit to a question about whether it was contemporaneous to the events described in the letter. Are you saying that if I read the state court opinion, it wouldn't mention the facts of the date of November 8th and then February 11th? It says that the state court, let's see, number three, made fairly contemporaneously to his impending death. That's the analysis on that point, under particularized guarantees of trustworthiness. So the lower state court did look at a question about whether it was related to the events or not. The state court of appeals did not engage in analysis of that question. But the lower court mentioned these dates? I mean, is it, you know, there's a difference between saying nothing and simply summarizing what's already in the record. Right. No, the analysis by the district court in this case was a different analysis than referred to by the court of appeals. Okay, thank you. You'll have your time for rebuttal. Good afternoon, your honors. May it please the court. John Pallas, assistant attorney general on behalf of the state of Michigan. On behalf of Warden Clarice Stover, we are the appellee this time around in this case. There's a quote, I think, from the facts of this case, and I'm not going to dwell on them long, but a quote that I think kind of summarizes the impact of this case or what this case is really about. And it's from Shari Miller in an email, quote, I will never be safe as long as Bruce lives. This is what Shari Miller told her lover, an ex-police officer named Jerry Cassidy, who Cassidy later kills. I will never be safe as long as Bruce lives. This statement, I think, summarizes or sets the stage for what has really been a very long and sometimes torturous route that this case has taken through the state and federal courts. But I think we now have the opportunity to finally close the door on this case and say the district court's denial of habeas relief was proper. There wasn't a contrary to or unreasonable application of Ohio v. Roberts in this case. And it was interesting listening to Ms. Thomas. Actually, I think there's so much that we actually agree on. I think we agree that AEDPA applies. I think we agree basically what the controlling Supreme Court precedent is in terms of Ohio v. Roberts. So unlike the last time this case was before this panel, or at least some members of this panel, AEDPA definitely applies. And I think as the Supreme Court, and I'm certainly not going to belabor the AEDPA point because I know your honors are very familiar with AEDPA and what it talks about. But basically the really crux of this case, the question is, and what we have at dispute here, is whether the Michigan Court of Appeals reasonably determined that there was a showing of particularized guarantees of trustworthiness. That's the crux of this case. And when you look at what the Michigan Court of Appeals said here, you have to take it in the context of AEDPA once again. And the district court very keenly, I think, noted that Roberts is a very general non-mechanical test of admissibility. As our Supreme Court has said in Renico v. Lett, the more general the rule, the more potential there is for fair-minded, reasoned disagreement. So in that context, we have to think about this case in AEDPA. And let me just start right off the bat with Sister Counsel's comment that, in her brief, that the Michigan Court of Appeals decision is contrary to Idaho v. Wright. And she says that, that the Michigan Court of Appeals decision is contrary to Idaho v. Wright. Well, what Idaho v. Wright said was, a court cannot bootstrap corroborating evidence to show the trustworthiness required by Roberts. It did, however, say, as the district court noted, that spontaneity and consistent repetition of such statements is a consideration, which is something I'm going to talk about later. But the Michigan Court of Appeals here did not do anything contrary to Idaho v. Wright. In fact, in discussing the Roberts factors, and they don't specifically cite Roberts, but cite state court law that cites to Roberts and related authorities, the Michigan Court of Appeals said, right in its discussion, quote, the court must not consider whether evidence at trial corroborates the statement. So I think Miller is reading something into what the Michigan Court of Appeals did, which it explicitly said it wasn't doing. And again, we have to give every benefit of the doubt to the state court. At worst, I think what the Michigan Court of Appeals was saying about the suicide note when it said it was consistent is that it was internally consistent. And I'll get more to that later. I mean, that may not... Well, why not now? I mean, the internal consistency of it is not very appropriate for Wright. I agree, Judge Koutsalage. I think it is certainly not the Michigan Court of Appeals' most compelling point for admissibility of this statement. What is, in your view? I think the most compelling point are that the statements that Cassidy made were directed to family members, as opposed to being directed to law enforcement. And I have to really strongly disagree with Sister Koutsalage when she said that the suicide letter was intended to be given to law enforcement. First of all, let's talk about that letter for a second. It was addressed to his mom and dad. It wasn't addressed to the police. And I understand it was on top of a briefcase that did contain materials that were intended to be given over to the police. But it was in a stand-alone envelope, and it did not say, do not open alone or open in the presence of an attorney, like the material that he intended for the police. So maybe... I'm new to this case, so I'm trying to get everything straight. Where he wrote, do not open alone, was that on the envelope for this letter? No. Was that something relating to the briefcase? That was something related to the briefcase, as I understand this record. Was that some envelope? What piece of paper was that? I believe it might have been, and I could be wrong, but I believe it was material that was contained within the briefcase. Why would he put it inside the briefcase if the lawyer is supposed to be there before he opens it up? Well, there was the letter to the mom and dad, and the personal letter, and then further materials that I think were reasonably intended for the police. That's why he said open in the presence of the attorney. That was addressed to his brother, was it not, this Mike? Yes. As I understood it, the briefcase, in fact, went to Mike. That's correct. The notes, in fact, went to the parents, the ex-wife, and the children. Two of those never surfaced. That's right. They never did, Judge Boggs. It appeared that statement that I hadn't been aware of before, that the parents and Mike meet after the funeral, and the parents show their note to Mike. Is that your understanding? That's my recollection of the record as well. Your adversary seemed to say that everything got to the police at once. Is that your understanding? That is, did Mike then take the notes and go to the police? I cannot say for certain that everything ended up at the police at the same time, but certainly the intent was that this letter that is addressed to mom and dad was not intended, as sister counsel says, to be delivered to law enforcement. In some of the other materials, she says, for example, in her brief, Cassidy's letter was designed to go to law enforcement to help prosecute Shari Miller. It was not a secret correspondence to family, but there's really no evidence of that here. You look at the suicide note, and I printed out a copy of it and looked at it, and it sure doesn't seem like it's intended for police. It's a very personal, very touching letter actually. He talks about his parents being the best possible parents he could have had. He gives his instructions to his parents to what to do with insurance money. It really reads, my co-counsel at the table actually gave me this idea this morning, it kind of reads like a last testament, a will and testament actually, more so than some sort of document to be used to get back at Shari Miller. I would submit, if you look at this letter, probably more than half of the note itself isn't really about Miller in a direct sense, but he's talking about concerns for his son, whether his son would be able to collect on an insurance policy for him, how his parents should handle that money if given to his son, for example a trust. He asks his parents to take care of his son. He talks about being cremated. He talks about his ashes being taken to his favorite hunting tree. There's a lot there. Could there be two purposes to the note? There could be, no, I would say no. I think the purpose of this particular note was to explain to his mom and dad, this is why I'm committing suicide. You were wonderful parents, I have a wonderful family, I had to do this, and basically I think the note here, this is somebody that the police didn't even suspect. He wasn't even on their radar whatsoever, and so this is, what he's basically saying is, yes, Shari Miller pulled me into this, I made some mistakes, but he admits, I'm the one who killed Bruce Miller. I'm the one who went to Michigan and shot and killed Bruce Miller. He really seems to acknowledge in this note that his failings, I mean certainly he recognizes Miller's deceit, but it almost seems like I'm the one, what he's telling his parents is, I'm the one that had the greater sin here. I was the one that was duped by this woman. This is why I'm doing this. You were wonderful parents, but I got pulled into this situation, I did this horrible, horrible thing, I shot and killed this man, and I feel horrible about it, I feel guilty about it, I'm an ex-police officer, I can't go to prison about it, I feel like I've got no other choice but to do what I'm doing, but mom and dad, please know this isn't about you, and take care of my son for me. I think when you look at the letter in its totality, you can take certain segments of it, certain sentences, Judge Moore, that certainly do talk about Miller and there are things, I concede, he says she just wanted all her money and no more husband, but she is soon to learn that she can't do that to people. There are things in there, but the primary purpose of this particular document was to tell his parents this is why I'm committing suicide, and please do this for my son, do this with my ashes, have me cremated. Counsel, I want to be clear, we had an earlier discussion about the briefcase. Your brief does say that there was a note taped on the briefcase saying, Mike, don't open it alone, so that's how Mike handled the briefcase, because Mike was the one who found it. The brother had told him about the briefcase before he left town to do the murder, correct? That's correct, yes. Mike delivered the envelopes to their addressees separately, and then they got together a couple of days later at the funeral. And my brother, Counsel, who wrote this brief, I certainly, he knows this case. He has citations for that, I just wanted to be sure that was my correct interpretation. He was involved from very early on in this case, and unfortunately he couldn't be here today to argue this case, so like Judge Kethledge, I'm fairly new to this case and trying to think about it, but in a way it brings a perspective to this case that I think to have me come to this, because I just, looking at this, I can't say, I just find it really difficult that a federal court could say that under AEDPA, with this very, very general rule of Ohio versus Roberts, where there's so much leeway given to the state, and the state does talk about some of these factors, and yes, a couple of them are not as compelling as some of the other ones, and I don't disagree with that. And, but there are other things that the sister counsel asserts that I just don't agree with. For example, she says, well, they make a very rote assertion about these particular factors. Well, I mean, we all know now from Harrington versus Richter, and then more recently Johnson v. Williams, there is a, you don't have to go through detailed analyses. These aren't being graded like law exams. They cited the factors, and that's sufficient under AEDPA, and as long as it's reasonable, there's really no need to pick it apart as if maybe if this court were reviewing this de novo as it did the last time, or if this were a direct appeal case. I think in totality, when you look at what the Michigan Court of Appeals did here, there's nothing unreasonable about what they did, and as you, as I try to answer your question, Judge Kethledge, I think the most powerful aspect of this suicide note is the fact that most of it doesn't deal with Shari Miller in a direct sense, and it's this very personal letter explaining to mom and dad why he's committing suicide. So to summarize what you think are the guarantees of trustworthiness, what would you say? Well, I think the most important ones certainly would be the spontaneity of the statements. I think the consistency, I may not say that that is a strong factor. I could certainly, the internal consistency of the statement, I think that's what the Court of Appeals meant. I mean, I don't think it's that strong of a point, and I kind of agree with the District Court in that respect, but there's certainly no Supreme Court precedent that says that you can't look at the... We're looking for your hit list, though, so I mean, what do you think are the best ones? Well, again, being the fact that the parents were the ones that this was directed to, that it was directed to family members, I would actually agree that it was a very spontaneous and contemporaneous to the event, and I have a theory on why that's the case. I mean, it's an undated letter. We don't know when this letter may have been written. He could have written it the day or two after he committed the murder of Bruce Miller. We just don't know that as a matter of fact. Should the measure be contemporaneous to, in other words, should it be contemporaneous to the murder, or should it be contemporaneous to the suicide? I would agree, Judge Moore, as the District Court indicated, that I think properly it should be contemporaneous to the event that we're talking about, that is, the murder of Bruce Miller, and I actually think there's evidence on this, if I can finish answering your question. I think there's really no evidence to show that it wasn't necessarily written a day or two after the murder. He may have written it, or written it piecemeal, and then ended up deciding, okay, I'm going to commit suicide in that instance. Thank you, Counsel, unless you want to hear any further, anything else from my colleagues, I think your time has expired. Thank you very much for this opportunity, Your Honors. You have two minutes for rebuttal. Thank you, Your Honor. So I'm going to start with Brother Counsel's hit list for his particularized guarantees of trustworthiness. Is it guarantees of trustworthiness or indicia of reliability? The case list says that if particularized guarantees of trustworthiness give us an indicia of reliability. So first of all, spontaneity actually isn't listed by the Michigan Court of Appeals, but there's nothing to suggest here that this is spontaneous anyway. Mr. Miller had months and months to ruminate on being dumped by Ms. Miller, or Mr. Cassidy, excuse me. He had months to ruminate on everything about his life, and there's nothing that would suggest that that is even supported by the record. Second, with respect to consistency, Brother Counsel, and you have an argument regarding contrary too, but Brother Counsel suggests that there's an internal consistency, and I think it's really telling the facts that he points to. He says that these two facts show the internal consistency, that Sheree Miller says she'll get what's coming to her, and that Mr. Cassidy says she is soon to learn she can't do that to people. So what we know is that he consistently is looking to take revenge on Ms. Miller. That's the only thing that we can really consistently say throughout this suicide note. That doesn't show a trustworthiness or a guarantee of trustworthiness in this case. That, in fact, shows that the letter should not have been admitted, that he has a bias and motive against Ms. Miller, and he's taking that out in this letter, which he's putting on top of the briefcase, which everything else he's established this chain of custody to go to the police and for the police to obtain this letter, and so he can get his revenge on Ms. Miller. Anything else? Thank you. Thank you, counsel. Case will be submitted.